UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN F. ROGERS,<br><br>        Plaintiff,<br><br>    v.<br><br>FEDERAL HOME LOAN BANK OF SAN FRANCISCO,<br><br>        Defendant. | Case No. 19-cv-01978-SI<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 47, 48 |

On April 17, 2020, the parties in this action filed cross motions for summary judgment. See Dkt. No. 47 (Plaintiff's MSJ) and Dkt. No. 48 (Defendant's MSJ).[1] Pursuant to local rule 7-1(b) and General Order 72, the May 29, 2020 hearing is hereby VACATED. Plaintiff Brian Rogers' complaint alleges one cause of action for violation of Title VII, arguing defendant Federal Home Loan Bank of San Francisco ("the Bank") discriminated against plaintiff, who is African American, when it failed to hire him. Having considered the parties' papers and evidence submitted, the Court GRANTS defendant's motion for summary judgment and DENIES plaintiff's motion.

## BACKGROUND[2]

In February 2018, the Bank began recruiting for an accounts payable position. Annabelle Corpuz Dec. ¶¶ 3-4. The Bank's Accounting Operations Manager, Annabelle Corpuz, worked with Katie Baldino, the Bank's contract recruiter, to initiate the recruiting process. *Id.*; Dkt. No. 48-5 at ¶ 3 (Katie Baldino Dec.). On February 28, 2018, Ms. Baldino posted the accounts payable position. Dkt. No. 48-5 at ¶ 4 (Katie Baldino Dec.). The posting listed the following desired skills:

---

[1] For ease of reference, all citations to page numbers refer to the ECF branded number in the upper right corner of the page.

[2] The following facts are undisputed unless indicated.

-A minimum of five years account payable experience with strong working knowledge and understanding of bookkeeping principles, accounts payable procedures, and computerized accounting systems, methods and practices;

-A Bachelor degree in Accounting or Business Administration preferred; Effective oral and written communication skills;

-Ability to deal with outside vendors, employees and various levels of management in a professional and effective manner;

-High level of customer service;

-Thorough, detail-oriented, able to perform accurate data entry, work well under pressure with minimal or no supervision and meet strict deadlines;

-Ability to analyze accounts payable issues, recognize inconsistencies and recommend resolutions, includes ability to independently resolve routine issues; Must operate 10-key by touch effectively and efficiently;

-Strong working knowledge of Word and Excel; and

-Computer skills at a level to be able to operate vendor and proprietary software applications related to job function.

Dkt. No. 48-2 at ¶ 5 (Annabelle Corpuz Dec.); Dkt. No. 48-5 at ¶ 5 (Katie Baldino Dec).

In response to the posting, the Bank received 35 applications. Dkt. No. 48-5 at ¶ 6 (Katie Baldino Dec.); Dkt. No. 48-3 at ¶ 10 (Annette Rovai Dec.). As described in the job posting, the Bank did not consider candidates without (1) a minimum of 5 years of accounts payable experience and (2) experience with computerized accounting systems, methods, and practices. *Id*. Ms. Baldino conducted a number of phone screening interviews, including one with Mr. Rogers. Dkt. No. 48-5 at ¶ 8 (Katie Baldino Dec.). Mr. Rogers was selected for a phone screening interview because he seemed to have the requisite relevant experience and his resume stated that accounts payable was one of his areas of "expertise." Dkt. No. 48-5 at ¶ 9 (Katie Baldino Dec.). During the phone screening interview, Ms. Baldino formed concerns regarding Mr. Rogers – namely that he was evasive regarding his work history. *Id*. ¶ 8. Ms. Baldino relayed her concerns regarding Mr. Rogers to Annette Rovai, the Bank's head of recruiting. Dkt. No. 48-3 at ¶ 13 (Annette Rovai Dec.). But

1   it was decided to give Mr. Rogers the benefit of the doubt, knowing phone interviews can be tricky to gain an accurate read of people, and Mr. Rogers was extended an offer to interview with the Bank in person. Dkt. No. 48-5 at ¶ 8 (Katie Baldino Dec.). Ultimately, 7 candidates were interviewed for the position: two African-Americans, four Caucasians, and one Hispanic. Dkt. No. 48-3 at ¶ 14 (Annette Rovai Dec.); Dkt. No 48-2 at ¶ 8 (Annabelle Corpuz Dec.).

On March 21, 2018, Mr. Rogers interviewed with the Bank. Dkt. No. 48-3 at ¶ 18 (Annette Rovai Dec.); Dkt. No. 48-2 at ¶ 11 (Annabelle Corpuz Dec.). Based on each of his one on one interviews with Annabelle Corpuz (Senior Director, Operations Manager), Annette Rovai (Director, Senior Recruiter), Segen Berhe (Senior Associate, Senior Accountant), and Bill Coffin (Associate Director, Accounting Supervisor), the interviewing team determined Mr. Rogers was not qualified. Dkt. No. 48-2 at ¶¶ 12-17 (Annabelle Corpuz Dec.); Dkt. No. 48-3 at ¶¶. 18-21 (Annette Rovai Dec.); Dkt. No. 48-6 at ¶¶ 7-16 (Segen Berhe Dec.); Dkt. No. 48-4 at ¶¶ 5-11 (Bill Coffin Dec.). The team felt Mr. Rogers was not forthcoming regarding his experience. *Id*. Further, Mr. Rogers' interview raised serious concerns regarding his "soft skills" due to his "low energy," aversion to eye contact, and seeming lack of enthusiasm for the position. *Id*. The hiring team concluded Mr. Rogers' poor communication skills would translate into poor collaboration and customer service – critical requirements for the position. *Id*.

Instead, the Bank hired Karla Garcia, a Hispanic woman. Dkt. No. 48-2 at ¶ 19-21 (Annabelle Corpuz Dec.); Dkt. No. 48-3 at ¶¶ 28-31 (Annette Rovai Dec.); Dkt. No. 48-6 at ¶¶ 15-20 (Segen Berhe Dec.); Dkt. No. 48-4 at ¶¶ 15-20 (Bill Coffin Dec.). Ms. Garcia's resume indicated she brought a breadth of recent relevant experience, including over sixteen years as an accounts payable accountant or specialist at various companies in the Bay Area. *Id.*. Not only did Ms. Garcia have the desired professional experience, she interviewed extremely well. *Id*. During her interviews Ms. Garcia came across as engaging, confident, articulate, and enthusiastic about the job. *Id*. Ms. Garcia's poise was professional and demonstrated strong soft skills like eye contact and general interpersonal skills. *Id*. Ms. Garcia described herself as a hard worker with enthusiasm for collaborating with others. *Id*. On April 19, 2018, the Bank extended Ms. Garcia an offer which she accepted. Dkt. No. 48-2 at ¶ 21 (Annabelle Corpuz Dec.).

**LEGAL STANDARD**

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate an absence of evidence to support the non-moving party's case. *Id*. at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986).

For summary judgment, the Court must view evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Id*. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . ." *Id*. However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elec. Corp.,* 594 F.2d 730, 738 (9th Cir. 1979). Parties must present admissible evidence. Fed. R. Civ. P. 56(c). The right of an employee to a commission is governed by the terms of the compensation agreement. *Steinhebel v. Los Angeles Times Commc'ns*, 126 Cal. App. 4th 696, 705, 24 Cal. Rptr. 3d 351 (2005).

**DISCUSSION**

The parties agree the Court must assess plaintiff's claim under the *McDonnell Douglas* framework. Dkt. No. 48 at 13 (Defendant's MSJ); Dkt. No. 47 at 17 (Plaintiff's MSJ); *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). Under *McDonnell Douglas*, the plaintiff first must establish a prima facie case of discrimination. *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010). To make a prima facie case of discrimination, a plaintiff must show: (1) he belongs to a racial minority; (2) he applied for and was qualified for the job; (3) he was rejected despite his qualifications; and (4) the employer continued to seek applicants from persons of plaintiff's qualifications. *See McDonnell Douglas*, 411 U.S. at 802. "[T]he degree of proof necessary to establish a prima facie case is 'minimal and does not even need to rise to the level of a preponderance of the evidence.'" *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002) (*quoting Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir.1994)).

If the plaintiff establishes a prima facie case, the burden of production, but not persuasion, shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged actions. *Hawn*, 615 F.3d at 1155. If this burden is met, the plaintiff "must then raise a triable issue of material fact as to whether the defendant's proffered reasons for [the challenged conduct] are mere pretext for unlawful discrimination." *Id*. "The plaintiff may show pretext either (1) by showing that unlawful discrimination more likely motivated the employer, or (2) by showing that the employer's proffered explanation is unworthy of credence because it is inconsistent or otherwise not believable." *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1037 (9th Cir. 2005) (*citing Godwin*, 150 F.3d 1217, 1220-22 (9th Cir.1998)). The employee must offer "'specific, substantial evidence of pretext.'" *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir.1994) (internal quotations and citations omitted). Evidence as to pretext is considered cumulatively. *Chuang v. University of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1129 (9th Cir. 2000).

Defendant does not challenge whether plaintiff is a member of a protected class, rather, defendant argues (1) plaintiff was not qualified for the accounts payable position and (2) the Bank had legitimate nondiscriminatory reasons for not hiring Mr. Rogers. The Court agrees with defendant.

### I. Mr. Rogers Is Unqualified for the AP Position

To state a claim under Title VII, plaintiff must have been qualified for the position sought under neutral hiring policies. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52-53 (2003). "Failure to produce evidence of qualification will typically prevent a plaintiff from satisfying either the second or the fourth prong of the *McDonnell Douglas* test." *Lyons v. England*, 307 F.3d 1092, 1113, 2002 U.S. App. LEXIS 21066. Plaintiff must offer sufficient evidence to establish he possesses the "minimum qualifications" for the sought position. *Id*. at 1113-1114.

Here, Mr. Rogers was not qualified for the Accounts Payable position. Plaintiff argues that he was qualified because he "had over 20+ years in various different functional accounting roles…" Dkt. No. 47 at 18 (Plaintiff's MSJ). Defendant argues the veracity of Mr. Rogers' resume was seriously called into question by his failure to answer basic accounting questions and his evasive demeanor. Dkt. No. 48-2 at ¶¶ 12-16 (Annabelle Corpuz Dec.)[3]; Dkt. No. 48-3 at ¶¶. 18-21 (Annette Rovai Dec.)[4]; Dkt. No. 48-6 at ¶¶ 7-15 (Segen Berhe Dec.)[5]; Dkt. No. 48-4 at ¶¶ 5-10 (Bill Coffin

---

[3] "…my interview with Mr. Rogers convinced me he had very little relevant experience and very poor people skills …I don't remember him asking me any questions about the Bank or its accounting or accounts payable process … I was surprised when he seemed unable to describe the accounts payable process he used in his prior work. By the end of the interview, the combination of Mr. Rogers' disengaged body language, his confusing answers about [his current employer,] Centium, Inc., and his inability to describe the accounts payable process, convinced me he was not qualified for the Senior Accounts Payable Specialist position."

[4] "Mr. Rogers, however, struggled to answer [open ended] questions. He gave short or one-word answers that started to seem prevaricating. I also noticed Mr. Rogers asked no questions about the Bank, the position he applied for, or the team he would be working with …I also quickly concluded during the interview that Mr. Rogers had been less than forthcoming on his resume about his employment history. When I drilled down about this supposed employment as an 'A/P G/L Accountant' at Centium, Inc., since 2001, Mr. Rogers admitted to me he was the 'founder' and 'only employee' of Centium, Inc., … When I inquired further about Centium, Inc., the industry it was in, the type of work it performed, what type of clients it had, etc, Mr. Rogers was unable to provide any clear answers. Mr. Rogers' murky descriptions of his work at Centium, Inc., did, however, suggest he had virtually no accounting experience whatsoever there and, for the past seventeen years, had primarily focused on operations."

[5] "The interview definitely did not go as I had expected. Getting information from Mr. Rogers was like 'pulling teeth.' Mr. Rogers was awkward and uncommunicative throughout our meeting. He avoided eye contact and looked down at the floor … he eventually told me he was the sole employee [of Centium, Inc.] …I went on to ask Mr. Rogers more about Centium, Inc., and the type of work he did there … [his] answers were vague and confusing … he never gave me a clear answer … I was also struck by how little Mr. Rogers seemed to know about the Bank and how uncurious he was about it … [he] asked almost no questions."

Dec.)[6]. Even if plaintiff's resume was completely accurate, his demeanor during the interviews disqualified him from the position. *Id.* The interviewers state Mr. Rogers slumped in his chair, struggled to make eye contact, seemed evasive when answering basic questions, and indicated through this behavior that he would not collaborate well with others. *Id.* Plaintiff summarily dismisses this argument as "ridiculous" and "unrelated to performing the job." Dkt. No. 47 at 19. But the Bank's job posting for the accounts payable position specifically listed: (1) ability to deal with outside vendors, employees and various levels of management in a professional and effective manner and (2) a high level of customer service as sought after skills in applicants, as desired skills. Dkt. No. 48-2 at ¶ 5 (Annabelle Corpuz Dec.); Dkt. No. 48-5 at ¶ 5 (Katie Baldino Dec). Implicit in both these requirements are soft skills evident in an interview.

## II.   The Bank Had Legitimate Non-Discriminatory Reasons for Not Hiring Mr. Rogers

Even if Mr. Rogers was qualified for the Accounts Payable position, establishing a prima facie case of race discrimination, the burden would then shift to the Bank to present legitimate nondiscriminatory reasons for not hiring him. See *McDonnell Douglas*, 411 U.S. at 803. "To satisfy this burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731(9th Cir. 1986).

The Bank argues it did not hire Mr. Rogers for legitimate non-discriminatory reasons. Namely, the hiring team concluded Mr. Rogers: (1) did not have the relevant accounts payable experience; and (2) lacked communication skills and the ability to collaborate. As discussed immediately above, defendant has carried its burden on these two points and the evidence supports the Bank's legitimate nondiscriminatory reasons for not hiring Mr. Rogers. Dkt. No. 48 at 24-27.

---

[6] "My interview of Mr. Rogers was unremarkable. I was not impressed by his performance. I specifically recall his body language … hunched over in his chair and kept his eyes on the ground … When asked about his current employment at Centium, Inc. Mr. Rogers was unclear … I asked questions like "What is Centium, Inc.,?" … "What type of clients do you have?" … What Mr. Rogers described regarding his activities and experience at Centium, Inc. did not correlate well to the requirements of the Senior Accounts Payable Specialist position. … he was unable to provide sufficient examples that demonstrated he had the appropriate past experience in accounts payable."

Further, Mr. Rogers has not offered any evidence establishing the Bank's stated reasons for not hiring him are pretextual. Indeed, the only concrete evidence Mr. Rogers points to as evidence he was discriminated against is that he was not hired. Dkt. No. 47. Plaintiff tries to argue Karla Garcia was not as qualified as plaintiff and therefore the Bank hiring Ms. Garcia instead of Mr. Rogers evidences discrimination. Dkt. No. 47 at 24. But, unlike Mr. Rogers, Ms. Garcia had recent relevant experience and proved enthusiastic, personable, and poised during her interviews. Dkt. No. 48-2 at ¶ 19-21 (Annabelle Corpuz Dec.); Dkt. No. 48-3 at ¶¶ 28-31 (Annette Rovai Dec.); Dkt. No. 48-6 at ¶¶ 15-20 (Segen Berhe Dec.); Dkt. No. 48-4 at ¶¶ 15-20 (Bill Coffin Dec.). And the impression of Ms. Garcia as competent for an accounts payable position as well as capable interpersonally was true across the board with the interviewers. *Id*.

As such, plaintiff has failed to carry his burden on summary judgment and his motion is DENIED. Defendant has carried its burden and therefore defendant's summary judgment motion is GRANTED.

## CONCLUSION

Defendant's motion for summary judgment is GRANTED in its entirety and plaintiff's motion for summary judgment is DENIED in its entirety.

**IT IS SO ORDERED**.

Dated: May 26, 2020

SUSAN ILLSTON
United States District Judge